UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:11-CR-83-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | MOTION FOR UPWARD DEPARTURE |
| | : | |
| WILLIS SARVIS | : | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, moves this Court to depart upwardly from the advisory guideline range based on the fact that the circumstances in this case are of a kind that are not adequately taken into consideration by the guidelines and the defendant's criminal history fails to adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that he will commit further crimes.

**A. The circumstances in this case are of a kind not adequately taken into consideration by the guidelines.**

Guideline Section 5K2.0(a)(3) allows for an upward departure if there are circumstances present to a degree not adequately taken into consideration. In the present case, such circumstances exist. The defendant was convicted by a jury on January 16, 2013, of Distribution of Phencyclidine, a Schedule III Controlled Substance and Using and Carrying a Firearm during

and in relation to a Drug Trafficking Crime. Mr. Sarvis had previously pled guilty to Possession of a Firearm by a Felon on February 21, 2012.

The relevant facts are that on the late evening hours of March 17, 2011, the defendant and Roshad Jenkins agreed to meet for Mr. Jenkins to purchase a quantity of phencyclidine from Mr. Sarvis. They agreed to meet in the Hillcrest Housing Community in Wilmington, North Carolina. Mr. Sarvis walked to the spot of the drug deal, carrying with him a Romarm/Cugir, model WASR-10, 7.62 caliber semi-automatic assault rifle. When the two met, Mr. Sarvis sold Mr. Jenkins two bags of phencyclidine. At that time a dispute arose between Mr. Jenkins and Mr. Sarvis regarding the theft of a quantity of phencyclidine from individuals related to Mr. Jenkins. According to Mr. Sarvis, in his recorded statement, Mr. Jenkins said that he had been sent to collect for the stolen drugs. At that time, Mr. Sarvis began walking towards the car on which he had rested his firearm. Both men produced their firearms and discharged their weapons. Evidence collected at the crime scene revealed the weapon possessed by Mr. Jenkins was a .45 caliber pistol from which one shot was fired. Mr. Sarvis shot Mr. Jenkins twice which resulted in Mr. Jenkins' death. Mr. Sarvis told law enforcement that he believed the car that had dropped Mr. Jenkins off, which was now across the housing community, was a threat to him and he

began firing at the car. A total of 15 shell casings were collected by law enforcement. The crime scene investigation revealed the bullets went through the car, evidenced by broken glass in the roadway, and into and through the homes directly behind the car. Mr. Sarvis was ultimately taken into custody while attempting to leave Wilmington and go to New York.

An upward departure from the sentencing guideline range is appropriate if the defendant's conduct created a substantial risk to multiple victims. United States v. Hawkins, 87 F.3d 722, 729 (5th Cir. 1996); *see also* United States v. Pittman, 55 F.3d 1136, 1139 (6th Cir. 1995); *see also* United States v. Carpenter, 914 F.2d 1131, 1134 (9th Cir. 1990). In the present case, the defendant created a risk to multiple, innocent people when he shot across a housing community into an occupied car and into an occupied home. The guideline range in this case takes into account the injury and death of Mr. Jenkins via the cross reference to second degree murder. However, the guidelines do not reflect the additional 13 shots fired by the defendant. In addition, Mr. Sarvis chose to use a very powerful semi-automatic assault weapon that caused a path of destruction. Multiple bullets fired by Mr. Sarvis entered the exterior wall of two homes. In one home, bullets went through the wall and caused damage to the interior of the home. In the other home, the bullet passed through the home and exited the front of the home.

The risk created to others by this defendant was created by not only how and where he fired his weapon, but also the type of weapon he chose to use.

In this case, Mr. Jenkins was shot twice and killed by the defendant. Mr. Sarvis asserts the killing was in self-defense. Under North Carolina State law, first degree murder is defined as the killing of another with malice and premeditation and deliberation. N.C.G.S. §14-17. First Degree Murder is also defined as a killing that occurs during the course of any felony in which a deadly weapon is used. Id. This includes deaths that result in the course of drug deals which sour during their commission. State v. Squires, 357 N.C. 529, 532 (2003). The Courts have reasoned that neither perfect, nor imperfect self-defense applies to felony murder because that would fly in the face of the intent of the statute, that is to deter even accidental killings during the commission of an armed felony. State v. Richardson, 341 N.C. 658, 666 (1995); *see also* State v. Hunt, 198 N.C. App. 488, 491-492 (2209); *see also* State v. Jacobs, 363 N.C. 815, 822 (2010); *see also* State v. Brewington, 343 N.C. 448, 453 (1996). Perfect self-defense only applies in felony murder cases to the extent it would apply to the underlying felony. Jacobs, 363 N.C at 822. Under Federal law, First Degree Murder under a theory of Felony Murder is not defined as expansively as State law. First Degree Murder is

defined as the unlawful killing of another with malice aforethought or committed in the commission of any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual assault or sexual abuse, child abuse, burglary or robbery. 18 U.S.C. §1111. Any other murder that does not fit within the definition of first degree murder is second degree murder. Id. In this case, the presentence report sets Mr. Sarvis' offense level at 38 after a cross reference to second degree murder. The Government asks this Court to take into consideration the uncharged State crime of First Degree Murder when fashioning a sentence against Mr. Sarvis.

**B. The Defendant's criminal history category inadequately represents his criminal history.**

Guideline Section 4A1.3 encourages an upward departure if the defendants criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. See U.S.S.G. §4A1.3 (A departure may be warranted when reliable information indicates that a defendant's Criminal History Category "significantly under-represents the seriousness of the defendant's criminal history.").

Mr. Sarvis' criminal history began at age 18 and has continued until his present age of 33. Mr. Sarvis has acquired 15 sets of criminal convictions. See PSR #11-25. Out of those

15 convictions, 9 do not count for scoring purposes. See PSR #11, 12, 13, 14, 15, 16, 17, 21, 25. Notably, two of those convictions are for the sale of controlled substances. See PSR #15, 16.

Mr. Sarvis has a violent criminal history and a significant drug related history. Specifically, Mr. Sarvis has been convicted of breaking and entering a home where an accompanying charge of Second Degree Kidnapping was dismissed pursuant to the plea to Breaking and Entering. See PSR #14. In addition, Mr. Sarvis was convicted in 2004 of First Degree Burglary and Robbery with a Dangerous Weapon where a related charge of Assault With a Deadly Weapon Intent to Kill Inflicting Serious Injury was dismissed pursuant to the plea. See PSR #23. Mr. Sarvis also has a significant record for drug convictions. He has been convicted four times for selling or possessing with the intent to distribute a controlled substance. See PSR #15, 16, 22, 24.

**C. The Defendant has a sufficient likelihood of recidivism.**

In the instant case, Mr. Sarvis' criminal history is indicative of a recidivist in need of a longer term period of incarceration than the recommended advisory sentencing guideline range. Many of Mr. Sarvis' prior offenses occurred while he was out on pretrial release or on probation for another offense. For example, Mr. Sarvis was arrested for

Criminal Sale of a Controlled Substance in the 3rd Degree in New York while on probation for Breaking and Entering and Possession with Intent to Transport, Sell and Deliver Heroin in North Carolina. See PSR #16, 14, 15. While he was on probation for all three of those offenses, he committed the offense of Resisting Public Officer and No Operators License. See PSR #17. Within three days of being released from a 20 day active sentence imposed for those misdemeanor offenses, the defendant was charged with No Operators License, Reckless Driving and Failure to Heed to Light or Siren. See PSR #18. Mr. Sarvis acquired multiple driving offenses for which he ultimately served a 120 day sentence. See PSR #19. Within 19 days of being released from an active sentence on a Driving While License Revoked conviction, Mr. Sarvis was arrested for Possession with Intent to Sell and Deliver Cocaine. See PSR #22. A mere five days later, apparently while out on bond, the defendant committed the offenses of First Degree Burglary and Robbery with a Dangerous Weapon. See PSR #23. Within eight months of being paroled for that violent crime, Mr. Sarvis was arrested for Possession with Intent to Manufacture, Sell and Deliver a Schedule II Controlled Substance. See PSR #24. The instant offense occurred while the defendant was on probation for that drug offense.

Mr. Sarvis' prior sentences for criminal convictions have included both probationary and active sentences. His probation has been violated and ultimately revoked multiple times. In addition he has been given active sentences which have ranged in time from 10 days to 5 years. Neither probationary sentences nor active sentences have deterred Mr. Sarivs from continuing to commit criminal offenses. It is appropriate for the Court to upwardly depart when this defendant presents a serious likelihood of recidivism. United States v. Shrader, 56 F.3d 288, 292 (1st Cir. 1995). The fact that the defendant was recently released from a term of incarceration and on probation at the time of the offense indicates he is a serious risk for recidivism and an enhancement of his sentence is necessary to protect society from his criminal behavior.

## CONCLUSION

In this case, there are circumstances that are not adequately taken into consideration by the guidelines. In addition, criminal history category VI fails to adequately reflect the seriousness of Mr. Sarvis' criminal history. His criminal history and illegal activities demonstrate a strong likelihood that he will continue to commit crimes once released from custody. The Government respectfully requests the Court to grant the Government's motion for upward departure and sentence

Mr. Sarvis to a sentence that, in its judgment and discretion, adequately represents the seriousness of offense conduct, the defendant's criminal history and the likelihood that he will engage in further criminal conduct.

Respectfully submitted, this the 12th day of June, 2013.

                                        THOMAS G. WALKER
                                        UNITED STATES ATTORNEY

                                        /s/ Charity L. Wilson
                                        CHARITY L. WILSON
                                        Attorney for the United States
                                        United States Attorney's Office
                                        301 New Bern Avenue, Suite 800
                                        Raleigh, NC 27601
                                        Telephone: (910) 772-6930
                                        Fax: (919) 856-4487
                                        NC Bar No. 31584

CERTIFICATE OF SERVICE

I hereby certify this 12th day of June, 2013, that I have served a copy of the Government's Motion for Upward Departure upon the defendant by electronically filing as follows:

Robert E. Nunley
Attorney at Law
5 West Hargett, Suite 1000
Raleigh, North Carolina 27601

/s/ Charity L. Wilson
CHARITY L. WILSON
Attorney for the United States
United States Attorney's Office
301 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: (910) 772-6930
Fax: (919) 856-4487
NC Bar No. 31584